By the Court.*—Monell, J.
If this action can be sustained by the plaintiff, I can see no reason why he should not have a receiver to protect his interest in it. Of course, such receiver must necessarily be subor *273 dinated to any receiver already appointed, or to any other authority under which the money in controversy, or any part of it, is now held. But it is obviously proper that the plaintiff in this action should not be prejudiced by the action of the'plaintiffs in any of the several other actions which it appears are now pending, and which relate to the same fund, or to some part of it, that is involved in this action.
The order appealed from is probably too general in its terms, and confers, perhaps, more power upon the receiver than is proper, or was designed, and it must, therefore, be modified so as to subordinate his functions to those of any previously appointed receiver, as well as to those of the city chamberlain, in respect to the portion of the moneys alleged to have been deposited with him in the action pending in the supreme court.
The effect of such a modification of the order will be to leave the receiver to come in after the prior receiver becomes functus officio, and to take from him the fund, or any remaining portion of it: and in that way the plaintiff’s interest in this action will be protected.
If the authority under which it is alleged a portion of these moneys has been deposited with the city chamberlain is not sufficient, the receiver can ascertain it, and his receivership will give him a right to make the inquiry; and, if he shall be so advised, to apply to the supreme court in the action there pending, to be placed in possession of these funds. But this court cannot make any order in respect to that action, nor in respect to the subject of it, which will or may conflict with the jurisdiction which that court has already obtained, nevertheless, the receiver appointed in this action will , be in a position to take the money deposited with the city official, or such of it as may remain, on the determination of that action. It may be true, as was urged on the argument, as a reason for reversing this order, that the plaintiff could have applied in the O’Mahony suits pending in the supreme court, and also in this *274 court, to be made a party to those suits, for the purpose of protecting his rights to a portion of the fund which is in controversy there.
But even if he could do so, I do not think he was bound to do so, and as the receivership created by the present order is, as has already been said, necessarily subordinated to all previous receiverships of the same fund, it cannot injure other parties, and is a needed and proper protection to the plaintiff in this action.
But this order cannot be sustained for any purpose, if, as was urged by the appellant, the plaintiff has no cause of action which it is proper for a court of justice to entertain. I pass over the doubt, which might reasonably arise, whether a recovery can be had tipon the certificates of which the plaintiff alleges himself to be the owner and holder, without also alleging that he obtained them as a contributor to the funds, and not as a purchaser in the market, and take up the objection, that the purpose for which these moneys were obtained was unlawful, and being unlawful, the courts should not be open to parties engaged in such illegal acts.
It is probably true, and it is so substantially alleged in the complaint, that the money contributed to the “ Fenian fund,” as it was called, was designed to be used in subverting the established government, which then and now exercises dominion over the Irish people, and in erecting upon it a republic, or such other form of civil government as would secure the independence of that nation.
A purpose of that nature, had it been attempted to carry it into execntion in opposition to the principles of neutrality which have so long governed the United States, in respect to the internal strife of foreign nations, would have been unlawful. But it by no means follows, that because money is contributed to assist a revolutionary struggle', it may not lawfully be done, without violating any laws of neutrality, and such *275 would be the case when the money, although contributed here, was to be used only in the country where the struggle for independence was going on.
Our laws of neutrality prohibit the organizing and fitting out, with arms and amunitions of war, expeditions into any foreign country with which we are at peace, and our government always has, and I believe always will rigidly enforce the neutrality of her citizens within the letter and spirit of the law, and prevent any attempted interference with the government of other nations.
But to the extent only that has been stated, does this government see fit to interfere. The money of her citizens may be contributed to aid struggles for liberty in any part of the world. It was done, and nobly done, when Greece, and Poland, and Hungary were, at different periods struggling to be free from monarchical bondage, and establish the independence of those nations ; and it will continue to be done, whenever any people should attempt to overthrow existing monarchies or despotisms and establish free governments in their stead.
It does not appear in this case that the fund in question was designed to be used in any manner that would violate the neutrality laws of this country. There is no allegation that the' projectors were engaged in organizing or fitting out aimed expeditions into British territory, or that the money, or any part of it, has been or was to be used for such a purpose ; but the allegation is simply that it was “ to be tised on behalf of the Irish republic, in the struggle of the Irish people » for independence.”
The purpose, therefore, so far as the complaint shows, for which the money was contributed, was lawful and proper, and in none of its aspects it is against public policy to open the courts to a contributor who desires to rescind his subscription after the project has been abandoned and given up, and get back his money.
*276 But, even if the transaction could be regarded as unlawful, either as opposed to some statute, or as being against public policy, or otherwise, I yet can see no reason why this action may not be maintained.
Had the money been used or expended for any unlawful purpose, it could not be rescinded except where a recovery may be had under the provisions of some peculiar statute. But where the purpose for which the money was advanced or contributed, has been neither accomplished nor attempted, and the money remains unemployed, a depositary or contributor may rescind the contract and prevent the thing being done, and recover back his money. Thus, money lent to be used for betting at a gaming table, cannot, after it is lost, be recovered back. But before it is lost, the lender may rescind and recover. In this case the transaction is still executory, and it is not too late to render the rescission operative. So, in this case, the purpose for which the money was contributed not having been accomplished, or even attempted to be accomplished, and now having been wholly abandoned, the plaintiff has a right to rescind, and his rescission will become operative upon the fund in question.
I refer, in support of these propositions, to 2 Pars. Cont., 253; White v. Franklin Bk., 22 Pick:, 181; Cotton v. Thurland, 5 T. R., 405; Smith v. Bickmore, 4 Taunt., 474.
The order must be modified, by inserting therein that the authority of the receiver thereby appointed shall in no wise interfere with the authority of any other and previously and lawfully appointed receiver or custodian of the same fund or any part of it, except by action brought with the permission of the court or tribunal which has appointed such other receiver or custodian.
Speítcer and Jomes, JJ., concurred, the latter on the ground- that the complaint did not show any illegality in the transaction.

 Present, Monell, Jones, and Spencer, JJ.